Chief Justice Robertson,
delivered the opinion of the court.
Elizabeth Gilbert was indicted for permitting her female slave “to go at large, and hire herself out contrary to the statute’-' of 1802, in the county of Madison, from the 1st day of June, 1822, to the 8th day of September, 1829.
It was admitted on.the trial thal the slave had been permitted to go at large and hire herselfoutin Richmond, but no where else in the county of Madison during the whole period charged in the indictment. That being all the evidence, the law and the fact were submitted to the circuit judge, who, being of opinion that an/act of 1825, session acts 119, virtually repealed the act of 1802, so far as it might have operated in this case if still in full force', decided that the prosecution could not bo maintained, and therefore acquitted the accused.
The act of 1802, provides, that “if any person, whether the owner or hirer of a slave, shall permit his or her slave to go at large and hire himself or herself out, such owner or hirer shall forfeit ten pounds to be applied towards lessening thecounty levy where such slave shall be found-going at large and hiring himself or herself as aforesaid, to-be recovered by action of debt or imforrnation,” &c.
The 5th section of the act of 1825, provides that *185 *:‘ifany slave 'shall be found going at large in Har-rodsburg'lror Richmond working for himself or sel/j or contracting,or dealing/or himself or for more than one day at a time, (any colorable or pretended hiring to the -contrary notwithstanding,) it shall be lawful for the trustees of said towns to cause such slave to be hired out to tiie highest bidder for the term of ten days, orto commit such slave to jaii for ten days, and until his or her prison fees are paid by his or her owner; the money received for such -hiring to go in aid of the funds of the town.”
-A-ctot 1802, bitJfumler a penalty of ,'^owners o -lav.-s from permitting jar^ anclhire themselves out, anrt the ^''uich'hn^os Ascertaini10S" penalties going at lar°-e and hiring “sebes ©f liarrodsburgh 0T Richmond, compatible,
These two statutory provisions are not incompatible, and the last did not, in any respect, repeal the "nrst.
The act of 1802 was intended to secure the whole community against the mischiefs which may 'resul horn permitting slaves “to go at large and hire themselves out.” The act of 1825, was designed for another and more limited purpose. Its object was to regulate the police of certain towns. The vagrancy of slaves raav be peculiarly demoralising and peril•ous to the society of towns, whose security against such nuisances may require that means of prevention more summary and efficient than those provided by the gcnerailaw should be put into the hands of their own trustees. For that purpose, and at the instance of tire citizens of Harrodsburgh and Richmond, *-be special act of 1825 was passed. None of its sions conflict with the general law. The greater penal ty to the owner, and the more extensive injury to the whole community are not merged in the smaller penalty, and more circumscribed injury to averysmall portion of that communiiy. By permitting her slave “to go at large and hire herself out” any where in. the county of Madison, Mrs. Gilbert violated a general-law, endangered the security of the aggregate society, including that of Richmond, and incurred a penalty of ten pounds for the benefit of Madison county. By permitting her slave to infest th.e town of Richmond, she violated not only the same general law, but also a special and local law', and sjiperadded the common injury to the whole community a peculiar wrong to the people of Richmond, for which extrajudicial remedy has been provided, and a light *186 er penalty incurred for the benefit exclusively of the town. It could never have been the intention of the legislature to affect the act of 1802, by any thing in that of 1825. They never intende,d to abolish the penalty denounced, by the act of 1802, fora public wrong to all society, and substitute a less penalty for the same wrong, when aggravated by a particular locality. They could not have intended that, for permitting a slave to hire himself out in Harrodsburgh or Richmond, the owner should escape the penalty of ten pounds which would have been forfeited by the same hiring in any other part of the state. And it would seem to be the extreme of unreasonableness to presume that a public law enacted for the whole state, and which applies to every counfiy in the state, cannot operate in Mercer or Madison as it would, un-1 ,der the same circumstances inGarrard,dr Fayette, or any. other county.
The injury to society was not diminished but aggravated by the circumstance that the slave hired herself in Richmond. The citizens of Richmond did not apply for (he act of 1825, for the purpose of depriving (heir county of the penalty of ten pounds to which it would have been entitled fora violation of the act of .1802, any where within the bounds of the county; and that act was passed, not because the violation of the act of 1802, would be less injurious, but because it would be more mischievous to society, when occurring in Richmond than in any other part of ttie county of Madison, and because, therefore, to avert the greater inconvenience, an additional sanction was deemed proper, as a supplement, not as a substitute. Any other construction would tend to encourage all who may be disposed to violate the act of 1802, to send their slaves to Harrodiburgh or Richmond, instead of deterring them (as the act of 1825 intended to do,) from suffering their slaves to go at large, and act for themselves in those towns.
But the circuit judge seems to have supposed that whatever may have been intended by the act of 1825. its provisions are incompatible with those of the act of 1-802, and that therefore,’as to theoffence admitted in this case, the act of 18Ó2 has been repealed *187 that of 1325. This assumption is gratuitous. The offences described in the two acts, are not the same, as will be clearly seen by scrutinizing and ing their provisions. The act of 1802, denounces a penalty {orpermitting a “slave to go at large and hire himself. or herself out" for any time whatever. The act of 1825, authorizes the trustees of Richmond to hire out or imprison “any slave (who) shall he found going at large in Richmond, working for himself or herself, or contracting or dealing jfor himself or herself for more than one day al a time." There is thus an obvious and specific difference between the offen-ces described in the two acts. A slave may be found going at hrge, &c. without the permission of the master, then the act of 1802 would not, but that of 1 825 would apply. A slave may be working for himself or contracting for himself without hiring himself out, then the actof 1825 would apply, and that of 1802 would tiot. A slave may go at large and hire himself out only for one day; to such a case-the act of 1825 would not apply, but the act of 180-2 might thus be violated. The penalties also, are not only different, but appropriated to different' objects, the larger being given to the county for the more comprehensive wrong, the smaller being appropriable by the trustees of Richmond, for the mere local aggravation of the common injury. It is true, that in this case, both the act of 1802, and that of 1825 were violated; but as the injuries supposed'to have resulted to the town and to the county are different, and the penalties are intended for different objects, two offences are supposed to'have been committed.
By permitting a slave to go iarge&hire °hue towns of Har-rodsburgh or penalties' 0f both the law of ifs02 °{ onrred.
The two acts are therefore, in no respect repugnant or inconsistent, but are perfectly harmonious. If both penalties should have been inflicted on Mrs. Gilbert, she would have had ho cause for complaining that she had been punished twice for the same of-fence. Even if the offences had been precisely the same, the legislature had the power to inflict a penalty in behalf of the town, and another penalty in .behalf of the county. We know of no constitutional principle which would have forbidden such legislation. The only constitutional provision which could bear'on this point, is the 12th section of the 10th *188 article of the Kentucky constitution, and that declares-only that, “no person shall, for the same of-fence, be twice put into jeopardy of his life or his- limb-”1'
legislature ' has the power to inflict more- than one penalty for the same offence, provided the penr alty does not affect life or, limb..
'However questionable may be the expediency of inflicting more than one penalty for the same offence, the power of doing so, when neither life nor limb can be aifected, must be conceded. And it is so unreasonable to presume that the legislature intended to affect the act of 1802, by that of 1825, that even if the offences described in each act, had been identical, the latter act should not be construed as repealing the former.
But if both penalties could not be enforced according to the principles of the- constitution, or the maxims of the common law, vve could not admit that either of them could not be enforced as well as the other, because we are satisfied that the act of 1825- was not intended asan abolition of that of 1802, but, at most, could only be considered as cumulative. We are of opinion however, that both acts may be enforced. Suppose that since 1824, an act had been passed, authorizing the trustees of Richmond to seize and confiscate for the benefit of their town, the gaming apparatus of any gambler whom they might detect in the act of setting up or keeping a gaming-table in violation of the act of December, 1823, and vesting them also with power to apprehend the gambler and imprison him, unless he would give security that he would not again set or keep a gaming table in the said town,would such an act be inconsistent with that of December, 1823, and. operate as a constructive repeal of it? And notwithstanding the existence of the supplctory statute, might not an indictment be sustained against the gambler for the. penalty denounced by the act of 1823? Even more, might not both statutes be enforced? Equally strong is the reason why the act of 1825 is not incompatible with that of 1802.
In each case the posterior statutes must be considered as designed for only a special and local purpose, not inconsistent with, but subsidiary to the general and ultimate object intended to be effected by the pre-existing:, and more general and comprehensive statutes. So far the cases'are analogous.
Denney, alio. gen. & Gaodloe, for commonwealth; Turner, for defendant.
We arc, therefore, of opinion that the judgment of the circuit court is erroneous; wherefore, it is reversed, and the cause remanded for a new trial.